Filed 2/22/23  P. v. LaBarre CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>LUCAS ELI LABARRE,<br><br>　　Defendant and Appellant. | D080927<br><br><br>(Super. Ct. No. SCN428879) |

APPEAL from an order of the Superior Court of San Diego County, Brad A. Weinreb, Judge.  Affirmed.

Lucas Eli LaBarre, in pro. per.; and Sheila O'Connor, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

A jury convicted Lucas Eli LaBarre of assault with force likely to cause great bodily injury (Pen. Code,[1] § 245, subd. (a)(4)) and found that LaBarre had personally caused great bodily injury (§ 12022.7, subd. (a)).  LaBarre was

---

[1]    All further statutory references are to the Penal Code.

sentenced to the low term of two years in prison, consecutive a three-year term for the great bodily injury enhancement.

LaBarre filed a timely notice of appeal.

Appellate counsel has filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*), indicating counsel has not been able to identify any arguable issues for reversal on appeal.  Counsel asks the court to review the record for error as mandated by *Wende*.  We offered LaBarre the opportunity to file his own brief on appeal.  He has responded by filing a lengthy document (approximately 50 pages).  We will address his submission later in this opinion.

## STATEMENT OF FACTS

We will adopt appellant's statement of facts to provide background for this appeal.

### A.  Prosecution Evidence

Christopher Johnston was a student at Mira Costa College Technology Career Institute and in November, 2021, he was attending a class called Machining Technology.  There were 12 students in the class along with two instructors including John Abram.  On November 10, 2021, the students, including Johnston and LaBarre were working on a variety of different projects.  Johnston was working on a vice and had to use a CNC machine to do it.  The classroom had two different rooms, one with the manual machines and one, the CNC room, which contained the computer control machines.  Johnston wrote his name on the sign-up sheet to use one of the two CNC machines and that day, he began by turning on the machine to start to warm it up, which takes about ten minutes.  No one else was listed on the sign-up sheet.  While the machine was warming up, Johnston left the room to gather his supplies.  At the time, he didn't notice any tools or soft jams inside or on

the machine.  Soft jaws are located inside the machine, so you have to open up the machine to retrieve them.

When he returned from getting his supplies, there were two other students in CNC room, including LaBarre.  LaBarre and another student were talking between the machines, so Johnston went over to the machine he signed up for and began to open the doors to work the machine.  As soon as Johnston walked up to the machine, LaBarre said, from about five feet away, that he was using the machine.  Johnston replied he had signed up for the machine, but LaBarre said there was no sign up.  Johnston stated again there is a sign up, its right here, and told LaBarre if he has a problem with it, to go talk to an instructor.  Johnston turned back to the machine and LaBarre walked toward him and came up behind Johnston.  LaBarre stated again that it was his machine; Johnston disagreed and told him to take it up with the instructor.  LaBarre then asked if could at least get his parts, and Johnston agreed, but remained in front of the machine.

Johnston carried a pocket-knife which was visible to others.  LaBarre then began to hit Johnston, whose body was still facing the machine, but his head was turned to face LaBarre.  LaBarre hit Johnston about four or five times in his face, just below his nose, right on the mouth.  The two began to fall backward toward the other CNC machine and eventually hit the ground.  Johnston needed to stop LaBarre from hitting him again so he tried to hold LaBarre against his body so LaBarre couldn't make contact.  LaBarre was laying on top of Johnston, so Johnston pulled him closer in an attempt to restrain him and then LaBarre bit him.  Johnston then released his grip but saw LaBarre's arm again so he pulled him closer again and then LaBarre bit him again.  LaBarre bit him about three or four times.

Other students eventually came in and pulled LaBarre out of Johnston's grip. Johnston went to the bathroom to clean up his wounds.  His upper lip was completely cut through, he had a cut on his chin and a cut on the back of the head.  The bites caused light scraping, but no stitches were

required. His lip and chin, however, both required sutures. One of the bites took a few months to heal, while the lip and chin healed in about a month.

James Miller was another student in the class and friendly with Johnston. He was also friendly with one of the instructors, John Abram. On November 10, 2021, he was working on one of the computers in the room next to the CNC room. He heard another student loudly saying Lucas, stop. Lucas, stop. He looked through an adjoining window and saw Lucas running toward to the CNC machine and then disappearing behind a wall. At that point he didn't see Johnston. So, he ran into the room and saw LaBarre on top of Johnston and also saw blood everywhere; Johnston was holding LaBarre down in a defensive move to prevent anything else from happening.

Miller grabbed LaBarre by the head and bear hugged him, then told him to "get the fuck out" of the room. LaBarre turned around and hit a machine and yelled, "I can do whatever the fuck I want." LaBarre then grabbed a metal bar and turned around and looked like he was going to hit Miller with it. LaBarre had the pipe in a ready-to-swing posture and was about 2 feet away.

Miller heard from someone else that Johnston and LaBarre were talking about parts in the machine before the incident. After the incident, Miller was with Johnston until he was taken to the hospital.

John Abram was the instructor of the class. At the time of the incident, he was in the manual machine room which is adjacent to the CNC room. At some point he heard a noise coming from the CNC room, so he turned his head and saw a foot and a leg fly across the window. As an instructor, he was worried about the students' safety, so he ran into the room. He saw blood and LaBarre and Johnston on the floor, and it looked like they were wrestling. A group of them ran and pulled them apart. Abram pulled

Johnston away and someone else pulled LaBarre away. Johnston had a split lip and was pretty bloody. Johnston was not happy but didn't seem aggressive towards Abram or anyone else.

Abram saw Miller and LaBarre leave the room, when LaBarre grabbed a metal rod off of a cart and continue into the manual machine room. It looked like LaBarre was testing the weight of the bar, moving his hand up and down, and going towards something with a sense of urgency. Abram then yelled, "you will put that down immediately." LaBarre complied after motioning towards Abram with the rod. Abram told him to leave the room and LaBarre left. Abram locked the door after LaBarre left and he has not seen LaBarre since.

B. Defense evidence

LaBarre, who was taking the machine class to further his career, was working on a 3d test part on November 10, 2021. In order to continue to work on that project, he needed to use the CNC mill, so he went over to the machine that he had previously used and bolted his soft jaws, which were needed to manufacture his part, into the vice. He also had his 3D test part on the machine center's little shelf and a stack of papers near the machine as well as his USB in the control panel. The doors into the machine were transparent so one could see the stuff inside.

When Johnston arrived, he started riling through LaBarre's papers and tinkering with the control panel of the machine where LaBarre's stuff was located. LaBarre told him that it was his stuff and Johnston went to the side of the machine, looked at a piece of paper, and then left. LaBarre believed that the sign-up list on the side of the machine was not legitimate. He may not have known LaBarre had stuff already in the machine. Johnston returned about a minute later and LaBarre told Johnston again that he was

using the machine. Johnston replied that he had put his name on the sheet, but LaBarre had actually seen him write his name on the sheet when LaBarre was already there. Previously the instructors, including Davis and probably Abram, had told them not to use those sheets so LaBarre thought they were unauthorized. Johnston also told him to talk to the instructor about the list. LaBarre did not know who put the list up there; it could have been one of the instructors but that would contradict that they had been saying don't use one. LaBarre did not go see the instructor after what Johnston said.

LaBarre then told Johnston he had property on the machine and asked to retrieve it. Johnston at that point was in front of the machine and poked his head into the machine to confirm the stuff was in there; he would have had to move out of the way. LaBarre was behind Johnston on the left about four feet away; he could see his soft jaws still in the machine. He asked again if he could get them.

Then, Johnston turned around to face LaBarre and was moving his hand toward his folded pocketknife and saying, "No. No. No. You should have thought about that before. Not my problem." In order to use the knife, Johnston would have had to take it out of his pocket and open it up. They were nose-to-nose at this point. LaBarre was afraid because he believed that Johnston was probably going to attack him, so he punched him one time, and Johnston tumbled backward. LaBarre thought the fight was over, but Johnston began to swing back; they exchanged three or four blows with each other. Then Johnston grabbed LaBarre and pulled him to the ground, so that LaBarre's head was pushed into Johnston's chest. Johnston was holding on tightly and LaBarre was still afraid; LaBarre fell with his mouth open and was forced into Johnston's chest. Because LaBarre had difficulty breathing,

6

he clamped down on Johnston's chest. He bit him twice because Johnston did not let go.

Miller, Johnston's friend, came in and pulled LaBarre out of Johnston's grip. Miller had an aggravated attitude and was ordering LaBarre outside; LaBarre was afraid of further physical confrontation, so he put his hand on that metal rod. He denies that he picked it up to use as a weapon, but instead because he was scared.

The instructor Abram came in and immediately told LaBarre to put down the rod, which he did. Abram also told LaBarre to leave the building. LaBarre acted the way he did because he was in fear of an imminent threat. After Abram told him to leave, Abram locked him out of the room. He left the campus and did not call the police.

## DISCUSSION

As we have noted, appellate counsel has filed a *Wende* brief and asks the court to review the record for error. To assist the court in its review, and in compliance with *Anders v. California* (1967) 386 U.S. 738 (*Anders*), counsel has identified a possible issue that was considered in evaluating the potential merits of this appeal: Whether there is sufficient evidence to support the finding of infliction of great bodily injury.

In his supplemental brief, LaBarre complains about numerous failures of the system. He argues the victim was not credible and the injuries could not have occurred as they were described. LaBarre complains about the time and resource issues he encountered in writing his brief. His brief discusses the inadequacy of trial counsel, bias by the trial judge, and improper conduct by the prosecutor. He also complains about being in custody at trial and the disadvantages he suffered as a result.

7

Essentially, all of LaBarre's grievances are based on matters outside the record, or he asks this court to reweigh the evidence and make credibility decision. LaBarre has not raised any arguable issues for reversal on this direct appeal from the judgment.

We have reviewed the entire record as required by *Wende* and *Anders*. We have not discovered and arguable issues for reversal on appeal. Competent counsel has represented LaBarre on this appeal.

DISPOSITION

The judgment is affirmed.

HUFFMAN, Acting P. J.

WE CONCUR:

DATO, J.

BUCHANAN, J.

8